IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------X
:
ON TIME AVIATION, INC.              :   3:04 CV 1765 (JBA)
:
V.                                  :
:
BOMBARDIER CAPITAL INC.             :   DATE: DEC. 19, 2005
:
------------------------------------------------------X

RULING ON PENDING MOTIONS

Plaintiff On Time Aviation, Inc. commenced this action against defendant Bombardier Capital, Inc. on October 21, 2004 in which complaint plaintiff asserts the following three counts: breach of contract (Count One), fraud (Count Two) and negligence (Count Three). On November 19, 2004, defendant filed its answer and affirmative defenses. (Dkt. #6).

On August 25, 2005, this case was referred by U.S. District Judge Janet Bond Arterton to this Magistrate Judge for discovery purposes. (See Dkts. ##29 & 31). Thereafter, on September 20, 2005, plaintiff filed the pending Motion to Compel and brief and affidavit in support (Dkts. ##32-34)[1] and defendant filed its letter Motion to Compel (Dkt. #37). On October 11, 2005, plaintiff filed its response to defendant's letter motion and affidavit (Dkts. ##39-41).[2] On the same day, defendant filed its brief in opposition to plaintiff's Motion to

---

[1]Attached to plaintiff's brief in support (Dkt. #33) are the following exhibits: copy of draft letter agreement, dated May 21, 2003 (Exh. A); copy of executed letter agreement, date May 22, 2003 (Exh. B); copy of excerpts from deposition testimony of Edward Flynn, taken on June 28, 2005 (Exh. C); copy of Defendant's Responses and Objection to Plaintiff's Fourth Set of Document Requests, dated September 6, 2005 (Exh. D); copies of drafts of Aircraft Purchase Agreement and corresponding exhibits (Exh. E); copy of correspondence between counsel, dated September 19, 2005 (Exh. F); and copy of Annual Report of Bombardier Capital Ltd., dated May 1, 2003 (Exh. G).

[2]Attached to the affidavit of Linda H. Joseph, sworn to on October 11, 2005 ["Joseph Aff't"] are the following four exhibits: copy of transcript of status conference before Judge Arterton, held on August 25, 2005 (Exh. A); excerpts from the deposition transcript of Saad Wallan, taken on July 8, 2005 (Exh. B); and copy of correspondence

Compel and brief in further support of its letter motion. (Dkts. ##42-43).[3] Fourteen days later, defendant filed its reply brief to its letter motion and affidavit in support (Dkt. #44)[4] and on October 26, 2005, plaintiff filed its reply brief. (Dkt. #45).[5]

For the reasons stated below, plaintiff's Motion to Compel (Dkt. #32) is <u>granted in part and denied in part</u>, and defendant's letter Motion to Compel (Dkt. #37) is <u>granted in part</u>.

### I. DISCUSSION

#### A. PLAINTIFF'S MOTION TO COMPEL

In plaintiff's Motion to Compel, plaintiff contends that: (1) defendant has failed to produce documents it admits exist and that are crucial to establishing that the contract language at issue is ambiguous (Dkt. #33, at 4-6); (2) the personnel files of defendant's

---

between counsel, dated October 7, 2005 (Exh. C).

[3]Attached to defendant's brief in opposition and in further support of its letter motion (Dkt. #42) are the following fifteen exhibits: affidavits of William E. Corley ["Corley Aff't"] and Eric Fishman ["Fishman Aff't"], both sworn to October 11, 2005; another copy of Defendant's Response to Objection to Plaintiff's Fourth Set of Document Requests, dated September 6, 2005 (Exh. A); copy of fax cover sheet, correspondence, expert disclosure and expert report of Richard W. Schuller, dated October 5, 2005 (Exh. B); copies of correspondence between counsel, dated September 19, 28, and 29, 2005 (Exhs. C, F-G); another copy of transcript of the August 25, 2005 status conference (Exh. D); copy of Scheduling Order, dated September 2, 2005 (Exh. E); copy of e-mail correspondence, from February 26, 2004 to August 13, 2004 (Exh. H); another copy of the October 7, 2005 correspondence and copies of discovery of additional documents from Richard Schuller's files (Exh. I); copy of correspondence, dated March 8, 2004 (Exh. J); copy of privilege log (Exh. K); copies of invoices from Richard Schuller (Exh. L); and copy of plaintiff's amended privilege log (Exh. M).

[4]Attached are the following four exhibits: copy of Defendant's First Set of Document Requests, dated March 22, 2005 (Exh. 1); additional copy of excerpts from the Wallan deposition (Exh. 2); copy of e-mail correspondence, dated April 4, 6 & 14, 2005 (Exh. 3); and copy of excerpts from deposition testimony of Richard Schurig, taken on July 7, 2005 (Exh. 4).

[5]Attached are the following four exhibits: copy of a time sheet and e-mail correspondence dated May 5 & 22, 2003 (Exh. A); copy of Aircraft Purchase Order, signed in April 2003 (Exh. B); copy of e-mail, dated May 14, 2004 (Exh. C); and copy of Plaintiff's First Set of Document Demands, dated March 14, 2005 (Exh. D).

current and former employees involved in the transaction are directly relevant to the defense to the fraud claim that these employees had no "motive" to assume the risk that assigning and transferring the Honeywell Maintenance Service Plan ["MSP"] contract would require defendant to pay significant expenses (id. at 7-8); and (3) defendant should be directed to provide a date certain by which it will produce responsive documents (id. at 8-9).

In response, defendant asserts that there is no basis for plaintiff to seek the production of confidential personnel files (Dkt. #42, at 1-4); and plaintiff's motion to compel production of non-employment records should be denied as moot as defendant has produced responsive documents and the remaining issues were resolved by counsel (id. at 4-7).

In its reply brief, plaintiff contends that the limited information sought from the personnel files are directly relevant to defendant's defense to the fraud claim (Dkt. #45, at 1-4); and defendant has failed to present good cause for the late production of documents and plaintiff is entitled to the cost of this motion and to redepose Edward Flynn (id. at 4-5).

### 1. DEMAND NO. 2

Plaintiff seeks "all documents reflecting or relating to the sale of the four to six Aircraft in which the sale involved the transfer of MSP contracts including the following aircraft: a Lear 3A, Falcon 10, Falcon 20, and Lear 35A." (Dkt. #33, at 4-5). Defendant originally only produced documents regarding two of the four to six aircraft whose sale defendant's own witnesses testified included the transfer of MSP contracts. (Dkt. #33, at 5). Defendant has since produced all responsive documents but was delayed in doing so because the individual responsible for archived records is no longer employed by the defendant. (See Dkt. #33, at 5 & Exh. D, at 2-3 & Exh. F, at 3; Dkt. #45, at 5). Plaintiff contends that it has been prejudiced by the late production such that the documents were produced after the involved witnesses were deposed and two of defendant's employees were not consulted to identify the relevant documents prior to their depositions. (Dkt. #45, at 5). Defendant responds that

this fourth set of document demands was not served until after it completed its depositions of all noticed witnesses and its production was delayed because there is no index entry based on particular aspects of a transaction, such as the type of plane or whether an MSP agreement was involved so locating the final two transaction files was difficult. (Dkt. #42, at 6). Accordingly, plaintiff is not entitled to an award of costs and expenses for this motion (id.) and plaintiff's Motion to Compel further production in response to Demand No. 2 is denied as moot.

### 2. DEMANDS NOS. 4 & 8

Plaintiff also seeks a date certain by which defendant must produce responsive documents to its requests for documents reflecting or relating to the accounting for the loss with respect to the Aircraft Floorplan Security agreement and Aircraft Inventory Financing Note for the Hawker Model DH 124-1A, and the documents reflecting or relating to any days during May of 2003 when Flynn was absent from or out of defendant's Vermont offices. (Dkt. #33, at 8 & Exh. D, at 3-4).

On October 9, 2005, defendant produced responsive documents to these demands (Dkt. #45, at 4; Dkt. #42, at 5-6); however plaintiff contends that an award of the cost of the motion and the right to redepose Flynn should be ordered because the documents produced establish that Flynn was present in the office and that he "communicated with both Ms. Hovi and others regarding the Aircraft in question as well as other aircraft reposs[ess]ed by [defendant] as part of the Tyler bankruptcy." (Dkt. #45, at 4 & Exh. C). Defendant apparently has not offered any explanation for the delayed production. (Dkt. #45, at 4). Accordingly, plaintiff's Motion to Compel response to Demand No. 4 is denied as moot and plaintiff's Motion to Compel further response to Demand No. 8 is granted in part to the extent that if further deposition testimony of Flynn is necessary, such deposition shall be held and at the conclusion of this action, plaintiff may seek reimbursement for the cost of the deposition.

### 3. DEMAND NO. 1

Plaintiff seeks the "pers[onnel] file[s] for Edward Flynn, Juanita Hovi and Michael Wayshner for the period between January 1, 2001 and January 4, 2004, including but not limited to all job descriptions, performance measures or similar documents identifying performance targets, goals and objectives and all performance appraisals." (Dkt. #33, at 7 & Exh. D, at 2). Plaintiff contends that this information is directly relevant "to the . . . claim that these employees had no 'motive' to assume the risk that assigning and transferring the MSP contract would require [defendant] to pay significant expenses," and plaintiff is "entitled to discover whether [defendant's] performance management system provided for incentives and[/]or penalties which would result in employees assuming certain long term risks in order to meet short term goals and objectives." (Id. at 7-8).

As this Court has held, "[i]ndividual private employees, such as those who are the subject of this [Request for Production], have a privacy interest in avoiding the disclosure of identifying information contained in their personnel files." Russ v. Greater Watertown Federal Credit Union, 3:04 CV 365 (JBA)(JGM)(D. Conn. October 26, 2004), at 4, citing Hopkins v. United States Dep't of Housing & Urban Development, 929 F.2d 81, 87 (2d Cir. 1991)(citations omitted). To assess the weight of the privacy interest, the Court must balance such interest against the public interest in the disclosure of the numerous personnel files sought. See id. If such public interest will be served, CONN. GEN. STAT. § 31-128f permits disclosure of certain information from an employee's personnel file, including a verification of the dates of employment, the employee's title or position and wage or salary information, absent an employee's consent, if such disclosure is made, inter alia, "pursuant to a lawfully issued . . . judicial order. . . ."

Defendant correctly observes, in part, that "much of what might be located in the personnel records -- such as health data, home addresses and phone numbers, prior

5

employment history, special employee needs, . . . severance agreements and the like - has no relevance to the case. . . ." (Dkt. #42, at 2-3)(emphasis omitted). Defendant further asserts that individual employee evaluations will not set forth corporate incentive policies (id. at 3; Corley Aff't ¶ 2); and plaintiff has expressly disavowed the argument that any of the subject employees had personal incentive to engage in fraudulent conduct (Dkt. #42, at 4).

Defendant has produced documents setting forth the employees' performance responsibilities. (Dkt. #42, at 3). To the extent plaintiff seeks information relating to corporate incentive policies, such policies will not be in confidential personnel files and plaintiff may seek discovery of such policies to the extent that they exist. (See id., at 4).

Plaintiff does not have any objection to the redaction of confidential information, which is appropriate in this case as the privacy interests outweigh the need for the production of this information. (Dkt. #45, at 1). Plaintiff, however, insists on the production of the remaining portions of the personnel files because, according to plaintiff, plaintiff is entitled to inquire into the motives which defendant itself has placed at issue by defending on the grounds that they had no motives to assume risks when they may indeed have had such motives in order to meet their performance goals and objectives. (Id. at 1-4).

To the extent there are any documents in these files relating to performance goals or employee evaluations, the personnel files of these employees shall be produced to this Magistrate Judge for her in camera review **on or before January 13, 2006** so that the Court may determine whether such documentation evidences a motivation on the part of these employees to assume such risks.

B. DEFENDANT'S MOTION TO COMPEL

In its letter motion, defendant contends that plaintiff has "refused to produce two communications and portions of six others authored by [Richard] Schuller," plaintiff's

6

designated expert (Dkt. #37, at 1-2; Dkt. #42, at 11-12); plaintiff has not produced the e-mails from Richard Schurig, plaintiff's Director, and since the filing of the letter motion, plaintiff has "refused to conduct any e-mail searches" (Dkt. #37, at 2-3; Dkt. #42, at 7-8)(emphasis in original); and plaintiff should be ordered to direct its president, Saad Wallan, to search his files and produce responsive materials to defendant (Dkt. #37, at 3).

In response to the letter motion, plaintiff asserts that defendant has waived any objections with respect to the completeness of the production of documents from the files of Schurig and Wallan because Judge Arterton directed that if a formal motion was not filed by September 20, 2005, such objections were waived (Dkt. #39, at 1-2);[6] defendant has failed to establish that Schurig's e-mail files contained any documents which plaintiff has not already produced (id. at 2-3; see also Dkt. #45, at 7-8); defendant has failed to provide any evidentiary support for its claim that Wallan has any responsive documents (Dkt. #39, at 4); and the question of the scope of the claimed privilege regarding communications with Schuller is not yet ripe for review as counsel have not had an opportunity to meet and confer to determine if there are any outstanding issues. (Dkt. #39, at 5; Dkt. #42, at 8-9).

In its reply brief, defendant contends that plaintiff cannot escape its discovery obligations by arguing that defendant must first specifically identify the e-mails and documents not produced and to the extent plaintiff contends that it can no longer locate the e-mails, "then appropriate spoliation sanctions, including adverse inferences, will have to be

---

[6]In its reply brief, defendant contends that plaintiff's waiver argument is misplaced as counsel for defendant never raised its discovery arguments before Judge Arterton and defendant filed a supplemental brief "supported by affirmations attaching salient documents." (Dkt. #44, at 3).

In light of the fact that defendant's motion has now been fully briefed, there is no need to dwell upon the fact that such motion was originally filed in the form of a letter brief. From henceforth, however, counsel will only be permitted to file letter-briefs after a discovery conference has been held before this Magistrate Judge during which such permission explicitly has been granted.

7

considered." (Dkt. #44, at 4-8). Defendant also asserts that plaintiff has failed to justify the myriad redactions in its expert's production and requests that the Court conduct an in camera review of all of the redacted information and order production unless the Court can discern a "clear distinction" in the roles of the expert. (Id at 8-10).

### 1. SCHURIG'S E-MAIL FILES

Defendant contends that plaintiff has not produced the e-mails from Schurig (Dkt. #37, at 2-3; Dkt. #42, at 7-8) and plaintiff cannot escape its discovery obligations by arguing that defendant must first specifically identify the e-mails and documents not produced. (Dkt. #44, at 4-8). Plaintiff responds that it has produced the non-privileged portions of the "voluminous [e-mail] files" from Schuller to Schurig which confirm that there is no evidence that Schurig responded by electronic mail. (Dkt. #39, at 3).[7] Moreover, according to plaintiff, even though Schuller's e-mail files were available at Schurig's deposition, defense counsel never inquired about Schurig's use of e-mail. (Id.). Defendant disputes this contention, pointing to Schurig's deposition testimony wherein Schurig testified that he has not, nor has anyone in his organization search for past e-mails. (See Dkt. #44, Exh. 4). Defendant further contends that to the extent plaintiff asserts that it can no longer locate the e-mails, "then appropriate spoliation sanctions, including adverse inferences, will have to be considered." (Dkt. #44, at 7-8).

Plaintiff has produced numerous e-mails from other individuals, including from

---

[7] Although originally defendant was informed that Schurig's hard-drive had "crashed" on August 15, 2005 (Fishman Aff't ¶ 6; Dkt. #42, Exh. F), the parties then exchanged correspondence in which defendant set forth the specific searches that it believed should be undertaken to retrieve the relevant e-mails (Fishman Aff't ¶ 7; Dkt. #42, Exh. F), including reconstructing the hard drive, searching back-up tapes or searching the company's centralized on-line storage, or some combination of these methods. Plaintiff responded that it "saw no reason to proceed any further in any efforts to recover [Schurig's] e-mail." (Dkt. #42, Exh. G, at 2).

Schuller to Schurig, concerning the transaction at issue in this case; thus, defendant is aware that any e-mail responses by Schurig are relevant or, at minimum, reasonably calculated to lead to the discovery of admissible evidence. See FED. R. CIV. P. 26(b)1. "Reasonably calculated" in Rule 26 means "any possibility that the information sought may be relevant to the subject matter of the action." Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Maryland, 122 F.R.D. 447, 449 (S.D.N.Y. 1988)(citations & internal quotations omitted). Moreover, it is well-settled that the discovery of relevant "documents" encompasses the discovery of electronic or computerized data. See FED. R. CIV. P. 34(a) & 26(b); 1970 Advisory Committee Notes of Rule 34(a)(electronic data is part of the definition of "document").

Before addressing whether plaintiff must undertake the expense of searching its backup system for responsive e-mails, Schurig must first produce the responsive documents, to the extent there are any, on his computer and on the centralized online storage at the company. As plaintiff is aware, once it anticipated that it would commence litigation, it had a duty to suspend its routine document retention and destruction policies and preserve any evidence relevant to the litigation. Pace v. National RR Passenger Corp., 291 F. Supp. 2d 93, 98 (D. Conn. 2003)(citations omitted). If, after a thorough search, Schurig cannot locate any e-mails because such documents no longer exist (as a result of the computer "crash" or because of spoliation),[8] **on or before January 13, 2006**, Schurig must submit an affidavit to this Court attesting to his efforts to search for these e-mails and the grounds upon which the absence of such documents are based. To the extent additional responsive information is uncovered, plaintiff has an affirmative duty to produce all relevant information that is not privileged. FED. R. CIV. P. 26(b)(1).

Moreover, to the extent plaintiff has a backup system of all of their e-mail files, **on or**

---

[8]See note 7 supra.

9

**before January 20, 2006**, plaintiff must provide information regarding the system to defendant and must attest to the process they have undertaken, or will undertake, to search all of the past e-mails, for responses to defendant's specific Demands for Production. See Tom James Co. v. Trace Apparel LLC, 3:03 CV 596(JBA)(JGM), at 8 (D. Conn. 2004); see generally Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 317-24 (S.D.N.Y. 2003). **On or before January 27, 2006**, counsel shall contact the Magistrate Judge's Chambers to arrange a telephonic status conference to apprise the Court of their agreement as to the next stage of discovery of this electronic information, and if appropriate, the more difficult issue of the extent to which each party should pay the costs of production, and the issue of spoliation sanctions, if appropriate, shall be addressed. See Zubulake, 217 F.R.D. at 313-24 (after the parties reach an agreement whereby the requesting party asks the opposing party how it retrieves e-mails that are saved in its computer system and produce responsive e-mails if retrieval is possible, the court shall decide whether cost-shifting shall be considered).

Accordingly, defendant's letter motion to compel production from Richard Schurig is granted to the extent set forth above.

### 2. WALLAN'S PRODUCTION

Defendant seeks an order from the Court to plaintiff to direct Wallan to search his files and produce responsive materials to defendant. (Dkt. #37, at 3). According to plaintiff, defendant has failed to provide any evidentiary support for its claim that Wallan has any responsive documents. (Dkt. #39, at 4). For the reasons stated in Section I.B.1. supra, the documents defendant seeks are relevant or, at minimum, reasonably calculated to lead to the discovery of admissible evidence, see FED. R. CIV. P. 26(b)1, and defendant is not obligated to specify the exact documents it has requested that plaintiff produce. Moreover, although Wallan is a citizen of Saudia Arabia and therefore may not necessarily follow

business practices that are typical in the United States, plaintiff's counsel has an obligation to inform Wallan of the duty to preserve documents relevant to this litigation. (See Dkt. #39, at 4). Plaintiff's counsel avers that Wallan has already testified that he has no responsive documents and all of the documents related to the Aircraft at issue were retained at Schurig's offices and have been produced. (Id.; Joseph Aff't, ¶ 5 & Exh. B; see Dkt. #44, Exh. 2). However, for the reasons stated in Section I.B.1. supra, **on or before January 13, 2006**, Wallan shall submit an affidavit to this Court attesting to his efforts to search for the requested documents and e-mails. To the extent additional responsive information is uncovered, plaintiff has an affirmative duty to produce all relevant information that is not privileged. FED. R. CIV. P. 26(b)(1).

Accordingly, defendant's letter motion to compel production from Wallan to granted to the extent set forth above.

### 3. SCHULLER'S PRODUCTION

Plaintiff has designated Richard Schuller as its testifying expert but also contends that Schuller "'was retained by [plaintiff] in three different capacities'" such that "the subject communications do not concern his work as a testifying expert." (Dkt. #37, at 2). According to defendant, plaintiff stated in its interrogatory responses that Schuller would offer "[f]actual and opinion testimony on Garret engines, [the] Honeywell MSP program, [the] condition of Aircraft and its engines, [defendant's] liability, mitigation and damages and opinions with respect thereto." (Id.; see also Dkt. #42, Exh. B). On October 5, 2005, plaintiff produced Schuller's eleven-page expert report in which Schuller proffers opinions on most all issues in this case. (See Dkt. #42, Exh. B).

"If an expert is retained as both a consultant and a testifying witness, the work-product doctrine may be invoked to protect work completed by the expert in [his] consultative

11

capacity as long as there exists a clear distinction between the two roles." Messier v. Southbury Training School, 1998 WL 422858, at *2 (D. Conn. June 29, 1998)(citation omitted). The documents that defendant requests the Court to review in camera exceed 118 communications with at least 30 pages of redactions. (See Dkt. #42, Exhs. I & K).[9] **On or before January 13, 2006**, plaintiff shall provide to this Magistrate Judge, for her in camera review, copies of the expert's production including the redacted information so that a conclusion may be drawn as to which role Schuller was undertaking in the varying portions of his production. If ambiguity exists "about which function was served by [Schuller] when creating a document," such ambiguity will be resolved in favor of discovery. Messier, 1998 WL 422858, at *2 (citation omitted).

Accordingly, defendant's letter motion to compel further production from Schuller is granted such that this Court will conduct an **in camera** review of the redacted documents.

## II. CONCLUSION

For the reasons stated above, plaintiff's Motion to Compel (Dkt. #32) is granted in part and denied in part and defendant's letter Motion to Compel (Dkt. #37) is granted in part.

As this Magistrate Judge ruled on December 13, 2005, unless otherwise ordered in this ruling, all discovery was to be completed by January 31, 2006 and all dispositive motions were to be filed by February 28, 2006. (Dkt. #49). In light of the outstanding deadlines established in this ruling, all discovery shall be completed **on or before February 28, 2006**, and all dispositive motions shall be filed **on or before March 31, 2006**.[10]

---

[9] According to plaintiff, defendant has not identified which, if any, of the redacted items it is challenging. (Dkt. #45, at 8-9). Thus, plaintiff asserts that defendant's request that the Court conduct an in camera review is "both premature and would be a waste of judicial resources." (Id. at 9).

[10] The discovery issues raised in these two motions, the filing for which is 2.5 inches thick, could, and should, have been resolved by counsel themselves, without

This is not a Recommended Ruling but a Ruling on discovery, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a), 6(e) & 72; and Rule 2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within ten days after service of same);**  FED. R. CIV. P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated at New Haven, Connecticut, this 19th day of December, 2005.

_____/s/_____
Joan Glazer Margolis
United States Magistrate Judge

---

placing a further burden on the Court and as importantly, without additional cost to their clients.  Counsel must do better in their future communications between themselves.

If any counsel believes that a settlement conference before this Magistrate Judge would be productive, he or she should contact Chambers accordingly.