# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| ON TIME AVIATION, INC.,<br>    *Plaintiff*,<br><br>v.<br><br>BOMBARDIER CAPITAL INC.,<br>    *Defendant*. | No. 04-cv-1765 (JBA) |

**RULING ON DEFENDANT'S MOTION FOR SANCTIONS**

The plaintiff in this diversity action moved for Rule 11 sanctions against the defendant during the course of summary judgment briefing. The Court denied the plaintiff's motion as moot, having granted summary judgment in favor of the defendant. In opposing the plaintiff's motion for sanctions, the defendant also moved for imposition of sanctions against the plaintiff. The Court now addresses that motion and will grant the defendant's motion for sanctions.

I.    Facts and Background

Plaintiff On Time Aviation, Inc. ("OTA") brought this action against Bombardier Capital, Inc. ("BCI") to secure compensation for what it viewed to be a breach of the purchase contract for an aircraft. On November 1, 2006, the Court held a telephonic pre-filing conference with the parties, at which BCI generally laid out the grounds for its

anticipated motion for summary judgment, and OTA set forth its anticipated bases of opposition. The defendant was directed to file its motion by November 17, 2006 [Doc. # 96].

On November 15, 2006, apparently following a bitter epistolary dispute between counsel regarding the bases for defendant's anticipated motion for summary judgment, OTA's counsel, Linda Joseph, dispatched a letter to BCI's counsel, Eric Fishman, setting forth her view on how the contract at issue was to be properly interpreted, and explicitly warned Mr. Fishman that any motion for summary judgment which argued that the contract was unambiguous would be "entirely frivolous" and "would warrant the imposition of sanctions under [Fed. R. Civ. P.] 11."[1] BCI nonetheless filed its motion for summary judgment on November 17, 2006 [Doc. # 97], arguing in relevant part that the contract explicitly placed responsibility for engine repairs on the plaintiff.[2] In its ruling granting summary judgment to BCI, the Court held that "there is no ambiguity" in the "as-is, where-is" disclaimer in the contract at issue, and that plaintiff's construction of the purchase documents – that the disclaimer applied to everything but the aircraft's engines – would yield a contract which "is nonsensical."[3]

After BCI's motion for summary judgment was filed, OTA's counsel made good

---

[1] [Doc. # 109-2] at 13, 14.

[2] Def.'s Summ. J. Memo [Doc. # 99] at 12.

[3] Summ. J. Ruling [Doc. # 133] at 9, 10.

on her promise to file for Rule 11 sanctions, doing so on January 16, 2007 [Doc. # 107], and setting forth the reasons why BCI's summary judgment arguments warranted the imposition of sanctions, which largely tracked her position in opposition to BCI's motion for summary judgment.[4]

Mr. Fishman's memorandum in opposition to Ms. Joseph's motion for sanctions refuted the identified bases for sanctions, and cross-moved for sanctions to be imposed on Ms. Joseph for her duplicative filings and for her pre-summary judgment threats of sanctions.[5] The Court granted defendant's summary judgment motion and denied the plaintiff's sanctions motion as moot, but did not address BCI's motion for sanctions. In connection with the parties' appeal and cross-appeal, BCI filed a motion for clarification [Doc. # 139] requesting an explicit ruling on its cross-motion for sanctions. The Court granted the motion for clarification, and set the matter down for oral argument [Doc. # 143].

---

[4] OTA argued that BCI advanced sanctionable contentions when it argued that the contract terms in dispute were unambiguous and that it owed no continuing engine maintenance duty to the plaintiff; and when BCI allegedly intentionally failed to mention documentation of a warranty on the aircraft's engines in its summary judgment papers so as to defeat the OTA's fraud claim. See OTA Mot. for Sanctions [Doc. # 108] at 1-4.

[5] *See* Def.'s Opp. to Sanctions [Doc. # 111] at 2. Although Rule 11(c)(2) requires that a motion for sanctions be "served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets," the advisory committee notes do not contemplate such requirements for requests for sanctions set forth in opposition to a sanctions motion. "Service of a cross motion under Rule 11 should rarely be needed since . . . the court may award to the person who prevails on a motion under Rule 11 . . . reasonable expenses." Fed. R. Civ. P. 11 advisory committee's note.

## II. Standards for Imposition of Sanctions

Fed. R. Civ. P. 11(b)(2),(3) mandates that in making any representations to a court, an attorney certifies, in relevant part, that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and that "the factual contentions have evidentiary support." The 1993 amendment to Rule 11 eliminated any need for bad faith to be found before sanctions may be levied; instead, Rule 11(b)(2) "establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments," Fed. R. Civ. P. 11 advisory committee. Thus, the pole star of sanctionable representations to a court under Rule 11 is the presence of "objectively unreasonable statements," *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 393 (2d Cir. 2003).

Section 1927 of Title 28, in turn, provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." In contrast to Rule 11 which eliminates good faith defenses against sanctionable legal or factual contentions, § 1927 sanctions may only be imposed where "there is a clear showing of bad faith on the part of an attorney." *Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996). The Second Circuit has set a high bar on a determination that an attorney has acted in bad faith: "bad faith may be inferred 'only if

4

actions *are so completely without merit* as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (quoting *Shafii*, 83 F.3d at 571) (emphasis added).

The imposition of sanctions for a Rule 11(b) violation is a matter of discretion, requiring the court to "marshal the pertinent facts and apply the fact-dependent legal standard that informs its determination as to whether sanctions are warranted." *NatTel, LLC v. SAC Capital Advisors LLC*, No. 05-5419-cv, 2006 U.S. App. LEXIS 9460 (2d Cir. Apr. 12, 2006) (summary order); *see also Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group*, Inc., 186 F.3d 157, 166 (2d Cir. 1999) ("Once a court determines that Rule 11(b) has been violated," the decision to impose sanctions is discretionary.).

III. **The Proper Use of Sanctions Motions**

In its cross-motion for sanctions, BCI points to the substantial similarity between OTA's opposition to summary judgment and its motion for sanctions, arguing that Ms. Joseph improperly used OTA's motion for sanctions as a vehicle to advance OTA's legal position on summary judgment, and by doing so, needlessly multiplied the litigation. BCI asserts that OTA's sanctions motion is sanctionable under both Rule 11 and § 1927. However, because Rule 11 squarely addresses the infirmities in OTA's motion for sanctions, there is no need for the Court to reach the question of whether OTA's motion

evinced § 1927 bad faith.

      **A.**      **Improper use of Rule 11 to advance a legal position**

Rule 11 governs the minimum standards applicable to a "pleading, written motion, or other paper" submitted to a court, but is distinct from the other rules which provide for the presentation of a party's legal positions. Hence, the Rules Committee has cautioned that Rule 11 motions for sanctions "should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position." Fed. R. Civ. P. 11 committee note; *see also* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1336.3 (Rule 11 motions "should not be used to raise issues as to the legal sufficiency of a claim or defense that more appropriately can be disposed of by a motion to dismiss, a motion for judgment on the pleadings, a motion for summary judgment, or a trial on the merits."). Thus, "the imposition of sanctions is an issue collateral to and independent from the underlying case," as sanctions decisions "are 'not a judgment on the merits of an action.'" *Schlaifer*, 194 F.3d at 333 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-96 (1990)). *Accord CTC Imports & Exports v. Nigerian Petroleum Corp.*, 951 F.2d 573, 579 (3d Cir. 1991) ("In imposing Rule 11 sanction . . . the court does not pass judgment on the merits of an action . . . [r]ather it requires the determination of a

6

collateral issue: Whether the attorney has abused the judicial process."); *see also, Biomedino, LLC v. Waters Corp.*, No. C05-0042L, 2005 U.S. Dist. LEXIS 33629, 4-6 (W.D. Wash. Sept. 9, 2005) (denying defendant's sanctions motion as duplicative of its legal contentions and explaining that "[t]he fact that defendant and its expert disagree with plaintiff's proposed interpretation [of the patent-in-suit] . . . does not establish that plaintiff's claims are frivolous or legally unreasonable."); *Harara v. Conoco Phillips Co.*, No. C04-0515 BZ, 2005 U.S. Dist. LEXIS 1426 (N.D. Cal. Jan. 27, 2005) (denying plaintiff's motion for sanctions where the motion "does little more than restate the arguments in [plaintiff's] motion to dismiss"); *Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*, 315 F. Supp. 2d 623, 630 (D.N.J. 2004) (granting fees to the plaintiff where defendant chose to contest the sufficiency of the complaint via a Rule 11 motion instead of a motion to dismiss); *Jawbone v. Donohue*, No. 01-civ-8066, 2002 U.S. Dist. LEXIS 11806, at *19-20 (S.D.N.Y. June 28, 2002) (denying defendants' motion for sanctions because "[t]he arguments made by defendants in support of their Rule 11 motion are substantially identical to the arguments made by defendants in support of their motion to dismiss for failure to state a claim.").

Here, OTA filed its opposition to summary judgment and then, approximately one month later, filed a motion for sanctions largely duplicative of its summary judgment opposition memorandum. While OTA's opposition to summary judgment parried with defendant's substantive arguments in support of its motion for summary judgment, its

motion for sanctions merely recast these opposition arguments into a Rule 11-esque form. To submit full briefing in opposition to a summary judgment motion and then submit the same grounds as supporting a separate Rule 11 motion is patently unreasonable: one opposition is both sufficient and all a party is entitled to. Despite Attorney Joseph's contention at oral argument that she felt strongly that BCI's position was incorrect, a firmly held conviction of the correctness of one's position does not authorize collateral attack on an opponent's legal arguments by resort to Rule 11. To hold otherwise would be to condone wasteful motion practice as well as invite responsive cross-motions for sanctions.

B.     Unnecessary Multiplication of the proceedings

As a corollary, the Rule prohibits parties from submitting arguments "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). While a party should not be sanctioned for "greater litigiousness" alone, a court may infer improper purpose where multiplicative filings are coupled with "objectively unreasonable statements." *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 393 (2d Cir. 2003). In order to determine whether OTA's motion for sanctions contained objectively unreasonable statements, a more fulsome examination of the arguments advanced by OTA in its motion for sanctions is appropriate. *Caisse Nationale De Credit Agricole-CNCA v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir. 1994)

("The findings of a sanctioning court must of course be sufficient to permit appellate review . . . specify[ing] the sanctionable conduct and the authority for the sanctions").

### 1. OTA's argument re: BCI's use of the word "aircraft"

OTA's first argument in support of sanctions asserted that Bombardier's use of the word "aircraft" instead of the word "equipment" to describe the subject of the warranty disclaimer contained in the Delivery Receipt was done so "deliberately and falsely" by the defendant to improperly support its argument that the disclaimer clauses in the Delivery Receipt and Letter Agreement were identical, Pl.'s Mot. for Sanctions at 8. OTA contended that BCI's claim that the Delivery Receipt "likewise provides that OTA accepted the Aircraft 'AS IS, WHERE IS,'" Def.'s Mot. for Summ. Judg. at 12, is "false on its face and establishes that the Defendant's motion [for summary judgment] is both frivolous and completely lacking in merit," Pl.'s Mot. for Sanctions at 8.

In its memorandum in support of summary judgment, BCI argued that the contract in issue placed the responsibility for engine repairs on the plaintiff, reciting the relevant portion of the Letter Agreement, Def.'s Mot. for Summary Judg. Ex. 16 [Doc. # 100-17] which contains the disclaimer that "[t]he Aircraft is being sold and transferred 'AS IS, WHERE IS." BCI's brief then asserted that the Delivery Receipt "likewise provides that OTA accepted the Aircraft 'AS IS, WHERE IS'" as of the date of purchase. By using the word "Aircraft" outside of the quoted portion, defendant indicated a

paraphrasing of the document. In actuality, the Delivery Receipt's disclaimer clause states that "Purchaser has accepted the Equipment 'AS IS, WHERE IS'" and does not use the word "aircraft," Def.'s Mot. for Summary Judg. Ex. 17 [Doc. # 100-18]. It is this substitution of the word "aircraft" for "equipment" that OTA claimed to have been a deliberate falsehood warranting sanctions.

But for its placement of quotation marks, BCI's use of the word "aircraft," with a capital "A," could arguably appear to a casual reader to reflect a term from the contract. However, BCI never misquoted to the Court that the actual language of the Delivery Receipt read "Aircraft" instead of "equipment." It was BCI's choice of language that OTA claimed was a deliberate falsehood, thus obligating itself to provide a factual basis for that assertion. In neither the briefing nor her presentation at oral argument did counsel proffer a factual basis for leveling such a charge at BCI in a sanctions motion, and thus Ms. Joseph's representation of the existence of sanctionable conduct was objectively unreasonable.[6]

### 2. OTA's argument re: BCI's misstatement of the language in the Letter Agreement

The second argument which OTA raised in support of sanctions is

---

[6] OTA's counsel's argument necessarily presumes that BCI's paraphrased sentence would potentially derail the Court's analysis and erroneously carry the day for the defendant, reflecting a perception that courts do not read the record beyond the parties' briefs. This is an unwarrantedly dim view of the judicial decision-making process.

that BCI's summary judgment memorandum "knowingly and deliberate[ly] misstate[d] the very language of" paragraph five of the Letter Agreement in support of its argument that the document created no ongoing obligation for BCI, Pl.'s Mot. for Sanctions at 12.

In support of summary judgment, BCI had argued that the as-is, where-is disclaimer contained within the Letter Agreement between the parties was unambiguous language which effectively disavowed any warranty on the aircraft's engines.[7] In its introduction to the section of the brief containing argument directed to the language of the Letter Agreement, BCI accurately quoted the clause at issue, "BCI shall assign and transfer to the Purchaser the outstanding MSP contract concerning the Aircraft's engines."[8] Nonetheless, OTA urges in its motion for sanctions that BCI's "false representations" as to the language of the clause at issue permitted it to cite authority favorable to its position, requiring that BCI be sanctioned.

It is simply impossible to understand how a brief which begins its argument with a verbatim quote from the actual contract could be a misrepresentation of the contract language. Rather, it again appears that Attorney Joseph believed that any reading of the contract which did not align with OTA's interests constituted a false misrepresentation. A review of the record and of BCI's arguments discloses no misrepresentation, merely legal argument in support of its position. Where no such misrepresentation occurred –

---

[7] Def.'s Summ. Judg. Memo at 15-20.

[8] *Compare* Def.'s Summ. Judg. Memo at 15 *with* Def.'s Summ. Judg. Ex. 16 [Doc. # 100-17] at ¶ 5.

and indeed, where BCI accurately quoted the document whose contents it is accused of misrepresenting – OTA lacked any factual basis to argue that BCI's brief was sanctionable, and therefore itself has violated Rule 11(b).

### 3. OTA's argument re: BCI's intentional omission of evidence

Lastly, OTA argued that BCI intentionally omitted a piece of evidence in its summary judgment submissions to the Court, thereby putting itself in a position to represent to the Court that the "as is, where is" disclaimer in the contracts at issue effectively foreclosed its ongoing obligation to the plaintiff.

In April 2003, these parties negotiated the sale of the aircraft, and signed a purchase order which outlined the terms of the sale, *see* Ex. 17. Although a section of the document originally set forth that the aircraft included "Two [2] MSP engines in good running condition," that section of the document was crossed out by hand, with the following words inserted: "'AS IS, WHERE IS,' and except as provided herein, with no representations or warranties[] as to condition, merchantability, or fitness for a particular purpose." In its motion for summary judgment, BCI did not reference the document, and did not include the document in its exhibits.

In its motion for sanctions, OTA asserted that BCI "intentionally omitt[ed]" the purchase order and focused instead on "irrelevant disclosures with respect to everything BUT THE ENGINES" in order to defeat OTA's fraud claim, Pl.'s Mot. for Sanctions at 14

(emphasis in original).  OTA also asserts that BCI's argument that the as-is, where-is clause disclaims any warranty on the engines "is simply not true.  In fact, there are no disclaimers at all which mention the engines." *Id.* at 15 (emphasis in original).

Here again, Attorney Joseph has mistaken legal argument for objective reality: in order for her contention that "there are no disclaimers at all which mention the engines" to be true, one would have to accept her reading of the Delivery Receipt and Letter Agreement as applying the as-is, where-is disclaimer to everything but the engines of the aircraft, which the Court found unwarranted.  Apart from the lack of merit to her contract construction argument, Attorney Joseph's representation that BCI should be sanctioned because the record contains no disclaimers which cover the engine is itself a representation without a factual basis: BCI's contention contains factual support in the record in the form of the language of the contract at issue, and it was objectively unreasonable for Attorney Joseph to assert that no factual basis for the argument existed.

Thus, OTA's three bases for sanctions centered on objectively unreasonable statements which lacked factual support and were duplicative of OTA's substantive opposition to summary judgment.  Because the sanctions skirmish which Attorney Joseph's motion engendered drew the parties into precisely the litigation-multiplying situation which Rule 11 was intended to prevent and consumed scarce judicial resources, sanctions are appropriate.

### III. Use of sanctions as a threat

Lastly, BCI urges imposition of "severe[] sanctions" upon OTA's counsel because OTA's pre-summary judgment letters to BCI constituted a threat to use Rule 11 merely for bringing its anticipated motion for summary judgment. Because Rule 11 sanctions are restricted to representations to the Court (and not letters between counsel) and although Ms. Joseph complied with Fed. R. Civ. P. 11(c)(2)'s "safe harbor" provision when filing her motion for sanctions albeit anticipatorily,[9] the Court will construe this portion of BCI's motion as limited to § 1927.

The Court's supervisory responsibilities under § 1927 often necessitates a pained tolerance to aggressive communications between counsel which are not completely ungrounded in the facts of the case or the applicable law. *See Revson v. Cinque & Cinque*, 221 F.3d 71, 75, 80 (2d Cir. 2000) (reversing the imposition of sanctions under § 1927 for a letter which warned opposing counsel that "the legal equivalent of a proctology exam on your finances and billing practices" would ensue "unless you begin to act in a responsible manner," on the basis that "[a]n attorney is entitled to warn the opposing party of his intention to assert colorable claims, as well as to speculate about the likely effect of those claims being brought").

In this case, Ms. Joseph's letters conveyed her view that BCI's summary judgment

---

[9] *Compare* Joseph Aff., Ex. A [Doc. # 109-2] (letter to BCI's counsel dated December 22, 2006 requesting withdrawal of BCI's motion for summary judgment) *with* Pl.'s Mot. for Sanctions (filed with the Court on January 16, 2007, twenty-five days later).

14

arguments were meritless, where her familiarity with the arguments to be asserted came from the pre-filing conference.  Although the letter may have been misplaced and aggressive, intemperate and flawed missives do not always warrant sanction under § 1927: there is no suggestion that Mr. Fishman felt cowed in any way by the letters, particularly since he proceeded to file his motion for summary judgment just two days after receipt, and in virtually identical form to the arguments which he laid out during the pre-filing conference.  While the contents of OTA's sanctions motion is itself sanctionable as set forth above, counsel's correspondence is not.

**Conclusion**

For the reasons set forth above, BCI's motion for sanctions [Doc. # 111] is GRANTED in part, and OTA will bear reasonable costs and fees which BCI incurred opposing OTA's motion for sanctions.  BCI shall submit its affidavit of fees and costs sought, with appropriate documentation, by August 19, 2008.  Opposition shall be filed by September 9, 2008.

IT IS SO ORDERED.

/s/

_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut, this 5th day of August 2008.